MARTIN J. RYERSON *vs.* THE MORRIS CANAL AND BANK-ING COMPANY.

Where an injury for which suit is brought is slight, and the verdict, though for a small amount, seriously affects the interests and rights of the defendant, even if the weight of evidence is not decidedly with the defendant, but is conflicting and open to great doubt, the court will set aside the verdict, and grant an opportunity for further investigation.

On motion for new trial.

Argued before the CHIEF JUSTICE and Justices VAN DYKE, VREEDENBURGH, and WHELPLEY.

*F. T. Frelinghuysen,* for defendants.

*Zabriskie,* for plaintiff.

The opinion of the court was delivered by the

CHIEF JUSTICE.   This action is brought for injuries to the lands of the plaintiff, occasioned by a dam across the Pompton river, erected by the defendants for the purposes of their canal. The dam in question is the same structure that formed the subject of complaint in another cause before the court, at the last term, between the same parties. In that case the *gravamen* of complaint was the injury to the plaintiff's lands in the county of Morris, resulting from the neglect of the defendants to keep their dam and guard-bank in repair. In the present case the ground of complaint is the injury to the plaintiff's lands in the county of Passaic, occasioned by keeping the defendants' dam at an unlawful height.

The plaintiff, by his declaration, claims damages from the completion of the works by the defendants in 1838. The suit was commenced on the fourth of December, 1856. The statute of limitations having been pleaded, the contro-

versy was narrowed to a claim of damages for a continuing nuisance for six years from December, 1850, to December, 1856. The jury rendered a verdict for six dollars damages, or one dollar a year during the period in question. There is no complaint of the charge of the court or of the conduct of the jury. The sole ground of application for a new trial is that the verdict is against the weight of evidence.

As in all other cases of alleged injuries resulting from the flow or reflow of water, there is much conflict of evidence in regard both to the cause and the extent of the injury done to the plaintiff's land. The amount of damages recovered is so small that the court would not be justified in setting aside the verdict, and subjecting the parties to the expense of a new trial, if the payment of the amount recovered were the only consequence of the verdict. But the verdict has other and more serious consequences to the defendants. It is evident, from the tenor of the declaration, from the evidence adduced, and from the whole conduct of the trial, that the main question at issue was the height at which the defendants were entitled to hold their dam under a grant from the plaintiff in 1838.

The dam in question was originally constructed by the defendants, in the years 1836 and 1837, as an appendage to their canal. The land was then owned by Martin John Ryerson, the grandfather of the plaintiff. It is in evidence that the defendants entered upon the land and constructed their works, including the dam in question, under the authority of their charter, with the knowledge, and probably with the assent and approbation of the owner. He died in August, 1837, having devised the lands to his grandson, the present plaintiff. By a deed, dated on the fifteenth day of September, 1837, and acknowledged on the eleventh of August, 1838, he conveyed to the canal company, for the consideration of $4000, 22.61 acres of land, including all the land occupied by the feeder of the canal, with its embankments and towing path, and 4.53 acres of land overflowed in the county of Passaic,

together with the land occupied by the guard-bank and other lands above the dam in the county of Morris. It was held in the former case, and indeed does not seem to have been seriously questioned either in that case or in this, that the conveyance then made to the defendants authorized them to maintain the dam at the height it was at the delivery of the deed, and that the defendants cannot be held answerable for any overflow occasioned by such dam, nor for any consequential injury resulting from the construction of the defendants' works, provided they were properly constructed and kept in repair.

The plaintiff, by his declaration in this cause, complains that the dam was erected in 1837, and has since been maintained at an unlawful height, and that, by reason thereof, his lands are overflowed and injured. The allegation is not that the dam has recently been raised, but that it was erected, and has since been maintained at too great a height. The evidence tends to show that a stick of timber was placed on the dam soon after its erection, which materially added to its height. Whether that addition was in accordance with the original design and plan of the company's works, and made before the delivery of the deed, became a material question, affecting not only the amount of the plaintiff's damages, but the extent of the plaintiff's rights. On the part of the plaintiff, evidence was offered tending to show that the addition was made to the dam long after the delivery of the deed.

The defendants, on the other hand, offer evidence to show that the addition was made in accordance with the original plan of the dam, and was necessary to the successful operation of their work; that a stick of timber was placed on each end of the dam, according to the plan of the work, and raising it to its proper height in the fall of 1837; that the principal part of the dam was left a foot lower than the original design to avoid the danger of destruction by the spring freshets, but that the addition was

made, and the dam raised to its full height, in the spring of 1838, before the delivery of the deed to the defendants. It is obvious, from this statement of the evidence offered, as well as from the character of the complaint itself, that the issue involves not only a question of damages but a question of title.

By the verdict of the jury, the right is found against the defendants, and the work, as maintained, is pronounced a nuisance. It is conceded that the verdict is not conclusive as to the lawful height of the dam. That question was not directly in issue. The jury may have believed that the dam was erected, substantially as claimed by the defendants, prior to the delivery of the deed by the plaintiff, and that there was subsequently some slight addition to the dam, upon which the verdict for nominal damages is based. But though the verdict may not conclude the rights of the defendants, it is obvious that it may, if it stands, seriously embarrass their defence upon the trial of another action for the alleged nuisance. On this important point, I think, the weight of evidence is with the defendants.

There is evidence in the cause tending to show that the height of the dam, as it now exists, and the head of water thereby maintained, is essential to the successful operation of the canal. That work, as now maintained, is pronounced by the verdict a continuing nuisance. It is obvious that the verdict affects the pecuniary interests of the defendants to a large amount, and not only so, but it may prove highly detrimental to a great public improvement. On the other hand, the injury to the plaintiff, as found by the verdict, is merely nominal. Where the injury sustained by the plaintiff is so slight, where the interests of the defendants are so seriously affected, where the successful operation of an important public work may be embarrassed, and where, if the weight of evidence is not decidedly with the defendants, it is highly conflicting

and open to great doubt, it is right that an opportunity for further investigation should be afforded.

I think the verdict should be set aside, and a new trial granted.